UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-21231-CIV-ALTONAGA/Reid

MARINA BULIC,

    Plaintiff,
v.

CELEBRITY CRUISES, INC.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Celebrity Cruises, Inc.'s Renewed Motion to Compel Arbitration and Stay Proceedings [ECF No. 14], filed on May 5, 2025. Plaintiff, Marina Bulic filed a Response [ECF No. 23], to which Defendant filed a Reply [ECF No. 24]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is denied.

### I. BACKGROUND

**A. Facts of the Case**

This case arises from an alleged incident of nonconsensual sexual contact aboard one of Defendant's cruise ships — the *Constellation*. (*See* Am. Compl. [ECF No. 20] ¶¶ 9, 13–14). Defendant, a Panamanian corporation, employed Plaintiff — a citizen and resident of Serbia — as a revenue and marketing director on its vessel. (*See id.* 1, ¶¶ 2, 9).

Plaintiff alleges that during a crew party on board the vessel on August 3–4, 2023, she consumed alcohol, became impaired, and later fell asleep in a bar manager's stateroom. (*See id.* ¶¶ 10–13). According to Plaintiff, she awoke to discover the ship's restaurant manager ("M.M.") engaging in nonconsensual oral-vaginal contact with her. (*See id.* ¶¶ 13–14). Plaintiff alleges she

could not consent or resist due to intoxication. (*See id*. ¶ 14). Defendant investigated the incident but merely reassigned M.M. to another vessel rather than terminate him. (*See id*. ¶¶ 15–16).

Plaintiff asserts two claims against Defendant: one for negligence under the Jones Act, 46 U.S.C. section 30104 (*see id.* ¶¶ 17–22); and another for unseaworthiness under general maritime law (*see id.* ¶¶ 23–27). She seeks economic and compensatory damages, stating Defendant's failure to maintain a safe working environment on the vessel caused her injuries. (*See id*. ¶ 16).

**B. The Agreements**

Relevant here, at the outset of her employment aboard the *Constellation*, Plaintiff agreed to a "Sign On Employment Agreement" ("SOEA"), which outlined the terms and conditions of her position. (*See* Mot. 1–4; *see also id.*, Ex. A, SOEA [ECF No. 14-1]).[1] The SOEA set forth the basic terms and conditions of employment and incorporated by reference the arbitration provisions contained in a related Collective Bargaining Agreement ("CBA"); together, these documents constitute the parties' "Employment Agreements." (*See* Mot. 1–2; *see also id.*, Ex. B, CBA [ECF No. 14-2]). The arbitration provisions broadly require that all disputes between Plaintiff and Defendant, "whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with [Plaintiff's] service for [Defendant]" be resolved through binding arbitration. (CBA 23 (alterations added); *see also id.* 23–25; SOEA 3–4).

Defendant now seeks to compel arbitration, requesting that the Court refer Plaintiff's claims to arbitration in accordance with the Employment Agreements. (*See generally* Mot.). Defendant argues that the delegation clause contained in the Employment Agreements are valid and enforceable under the New York Convention and applicable federal law, and that it is for the

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

arbitrator — not the Court — to decide whether the claims asserted fall within the scope of the arbitration provisions. (*See id.* 1–2).

## II.  LEGAL STANDARD

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"), codified at Chapter 2 of the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. sections 201–08, requires signatory nations such as the United States, "to give effect to private international arbitration agreements and to recognize and enforce arbitral awards entered in other contracting states." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1261 (11th Cir. 2011) (citation omitted). The Convention provides that "[a] court having jurisdiction under [Chapter 2] may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206 (alterations added).

The Convention "generally establishes a strong presumption in favor of arbitration of international commercial disputes." *Bautista v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir. 2005) (citation and quotation marks omitted). Unsurprisingly, then, when deciding whether to compel arbitration under the Convention, courts engage in a "very limited inquiry." *Id.* at 1294 (citations and quotation marks omitted). The threshold question is whether the parties agreed to arbitrate the dispute at issue. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If the answer is yes, the court must compel arbitration "so long as (1) the four jurisdictional prerequisites are met and (2) no available affirmative defense under the Convention applies." *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 546 (11th Cir. 2016) (citations and quotation marks omitted).

The four jurisdictional prerequisites are:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or [] the commercial relationship has some reasonable relation with one or more foreign states.

*Bautista*, 396 F.3d at 1294 n.7 (alteration added; citation omitted). Meanwhile, "the only affirmative defense to arbitration is a defense that demonstrates the arbitration agreement is 'null and void, inoperative or incapable of being performed.'" *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 2015) (footnote call number omitted; quoting N.Y. Convention, art. II(3)).

"The party opposing a motion to compel arbitration . . . has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004) (alteration added; citation and quotation marks omitted). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (footnote call number omitted).

### III. DISCUSSION

Plaintiff does not contest that she signed arbitration agreements in connection with her employment aboard Defendant's cruise ship, nor does she dispute that the jurisdictional prerequisites are satisfied for enforcement under the Convention. (*See generally* Resp.). Instead, Plaintiff argues she is exempt from arbitration under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (the "EFAA"), 9 U.S.C. sections 401–02, enacted in 2022. (*See generally id.*). The EFAA renders pre-dispute arbitration agreements unenforceable at the

election of the person alleging conduct in sexual assault and sexual harassment disputes. *See Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 77 (2d Cir. 2024); *see also* 9 U.S.C. §§ 401–02.

Plaintiff argues the conduct underlying her Jones Act negligence claim (*see* Am. Compl. ¶¶ 17–22) and unseaworthiness claim (*see id.* ¶¶ 23–27), constitutes a "sexual assault dispute" under 9 U.S.C. section 401(3), entitling her to elect out of arbitration (*see* Resp. 4–5). Defendant disagrees, asserting that the EFAA is inapplicable because it governs only claims brought under statutes that explicitly prohibit sexual assault and sexual harassment. (*See* Reply 2). Since Plaintiff's claims arise under the Jones Act and general maritime law — neither of which expressly prohibits such conduct — Defendant contends the EFAA offers no shield from arbitration. (*See id.* 2–4). On that basis, Defendant urges the Court to enforce the arbitration clauses in the Employment Agreements and allow the arbitrator to determine questions of scope, enforceability, and applicability. (*See id.* 9).

The Court begins — as it must — with the EFAA's text, interpreting it in accordance with its plain meaning. *See Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1548 (11th Cir. 1990) (citation omitted). Under the EFAA, "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a *case* which is filed under Federal, Tribal, or State law *and relates to the sexual assault dispute* or the sexual harassment dispute." 9 U.S.C. § 402(a) (alteration and emphases added).

Section 401 supplies key definitions. A "sexual assault dispute" is one "*involving* a nonconsensual sexual act or sexual contact, as such terms are defined in [18 U.S.C. section 2246] or similar applicable Tribal or State law, including when the victim lacks capacity to consent." *Id.* § 401(3) (alteration and emphasis added). A "sexual harassment dispute[,]" on the other hand, is

5

one "*relating to* conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4) (alteration and emphasis added). Put simply, to fall within the EFAA's scope, a case must (1) be brought under Federal, Tribal, or State law and (2) relate to either a "sexual assault dispute" involving conduct defined in 18 U.S.C. section 2246 or a "sexual harassment dispute" relating to conduct that is alleged to be sexual harassment under applicable law. *See* 9 U.S.C. §§ 401(3)–(4), 402(a); (*see also* Resp. 4).

Plaintiff situates her claims under the EFAA's "sexual assault" prong. (*See, e.g.*, Resp. 2). Defendant does not dispute that Plaintiff's allegations align within that category as opposed to the "sexual harassment" prong (*see* Reply 2), nor could it. According to Plaintiff, she awoke to find a co-worker "engaging in nonconsensual sexual contact with her, including oral vaginal contact, amounting to rape and/or sexual assault" (Am. Compl. ¶ 13); while she lacked the capacity to consent or resist due to her intoxicated state (*id.* ¶ 14). That conduct plainly qualifies as a "sexual act" under 18 U.S.C. section 2246, which includes "contact between . . . the mouth and the vulva[.]" 18 U.S.C. § 2246(1)(B) (alterations added).

Notwithstanding the EFAA's plain text, Defendant insists that to extricate herself from the parties' agreement to arbitrate disputes between them and invoke the EFAA's protections, Plaintiff needed to assert her claims under a statute that specifically prohibits sexual assault. (*See* Reply 2). To support its position, Defendant selectively quotes the EFAA's requirement that a case be "filed under Federal, Tribal, or State law[,]" and then — inserting its own language — adds the phrase "that prohibits sexual assault[.]" (*Id.* (alterations added; citing 9 U.S.C. § 402(a)).

But the statute says no such thing. To the contrary, it provides that a person may avoid a pre-dispute arbitration agreement "with respect to a case which is filed under Federal, Tribal, or State law *and relates to the sexual assault dispute*[.]" 9 U.S.C. § 402(a) (alteration and emphasis

6

added). That language is expansive. Indeed, as the Supreme Court has explained, the ordinary meaning of the phrase "relate[s] to" is broad, "and the words thus express a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (alteration added; interpreting the Airline Deregulation Act (ADA); citing Black's Law Dictionary 1158 (5th ed. 1979) (defining "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; [or] to bring into association with or connection with" (alteration added))).

In addition to mischaracterizing the statute's text, Defendant leans on case law that offers no real support for its position — most notably *Gonzalez v. Carnival Corp.*, 757 F. Supp. 3d 1314 (S.D. Fla. 2024). (*See* Reply 3–5). There, the court found that the EFAA did not apply where a plaintiff brought a single intentional infliction of emotional distress ("IIED") claim stemming from her employment without alleging that the conduct violated a statute prohibiting such harassment. *Gonzalez*, 757 F. Supp. 3d at 1321–22. The court reasoned that under the EFAA's sexual harassment prong, a plaintiff must allege conduct that "constitute[s] sexual harassment *under applicable Federal, Tribal, or State law*." *Id.* at 1322 (alteration and emphasis added; quotation marks omitted; quoting § 401(4)); *accord Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 584–85 (S.D.N.Y. 2023). The court in *Gonzalez* thus interpreted the sexual harassment prong to require a statutory hook, effectively tying the EFAA's coverage to the legal theory asserted.

Crucially, however, the reasoning in *Gonzalez* turned on language specific to the sexual harassment prong — language that does not appear in the statute's separate definition of a sexual assault dispute. *Compare* 9 U.S.C. § 401(3), *with id.* § 401(4). And because this case involves only the sexual assault prong, the Court has no occasion to adopt or reject the interpretation of the sexual harassment prong offered in *Gonzalez*.

Indeed, the statute's sexual assault prong imposes no requirement that a plaintiff bring her claim under a law explicitly prohibiting sexual assault. It is enough that the dispute "involv[es] a nonconsensual sexual act or sexual contact," as defined in 18 U.S.C. section 2246 or similar applicable Tribal or State law. 9 U.S.C. § 401(3) (alteration added). That definition, grounded in the nature of the conduct rather than the legal theory invoked, stands in contrast to the statute's sexual harassment prong, which has been read to limit coverage to disputes "relating to conduct that is alleged to constitute sexual harassment under applicable" law. *Id.* § 401(4); *see also id.* § 401(3). The sexual assault prong's cross-reference to 18 U.S.C. section 2246 — absent from the sexual harassment prong — reinforces that distinction, supplying a substantive definition of qualifying acts without regard to how they are pleaded or labeled. *See id.* §§ 401(3)–(4).

The more instructive authority comes from case law interpreting the EFAA's sexual assault prong, although such decisions remain sparse due to the statute's recent enactment. *See Williams v. Mastronardi Produce, Ltd.*, No. 23-13302-Civ, 2024 WL 3908718, at *6 (E.D. Mich. Aug. 22, 2024) ("Because the EFAA is so new, there are few decisions interpreting it." (citation omitted)). For example, the Texas Court of Appeals for the First District held that allegations of "incessant[]" and nonconsensual "grop[ing]" and repeated "sexual contact," and references to the Texas Penal Code provision for sexual assault, satisfied the definition of unwanted "sexual contact" under 18 U.S.C. section 2246(3); consequently, the court found the complaint "pertain[ed] to a sexual assault dispute" under the EFAA, and the plaintiff could avoid arbitration. *Delirium TV, LLC v. Dang*, No. 23-cv-00383, 2024 WL 1513878, at *6 (Tex. App. Apr. 9, 2024) (alterations added; citations and quotation marks omitted); *see also Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 533 (S.D.N.Y. 2024) ("[A] plaintiff need only plead nonfrivolous claims relating to sexual assault" to avoid arbitration under the EFAA (alteration added)); *Delo v. Paul Taylor Dance*

*Found., Inc.*, 685 F. Supp. 3d 173, 181 (S.D.N.Y. 2023) ("[T]here is nothing in the text of the EFAA that suggests its applicability hinges on how a claim is labeled." (alteration added)).

Under the EFAA, a plaintiff may avoid arbitration where (1) the case is filed under Federal, Tribal, or State law and (2) relates to a sexual assault dispute. *See* 9 U.S.C. § 402(a). Plaintiff satisfies both conditions: she brings her case under federal law — namely, the Jones Act and general maritime law — and she alleges nonconsensual conduct that qualifies as a "sexual assault dispute" as defined by the statute. It follows that she may avoid arbitration in this instance.[2]

### IV.  CONCLUSION

The Court interprets and applies the EFAA according to its plain text. Because Plaintiff alleges a case relating to a "sexual assault dispute," as defined by the statute, the EFAA governs and precludes enforcement of the arbitration agreement. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, Celebrity Cruises, Inc.'s Motion to Compel Arbitration and to Stay Proceedings **[ECF No. 14]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 27th day of June, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[2] Defendant argues that the delegation clause in the parties' Employment Agreements requires the arbitrator to decide threshold issues of arbitrability. (*See* Reply 6–9; *see also* CBA 23–25). But the EFAA provides that its applicability "shall be determined by a court, rather than an arbitrator," even where the agreement contains a delegation clause. 9 U.S.C. § 402(b). Thus, the Court — not the arbitrator — decides whether the EFAA applies. And here, because Plaintiff brings a case relating to a sexual assault dispute, the statute applies.